1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD R. GATES,

                Plaintiff,

    v.

R. LEGRAND, *et al.,*

                Defendants.

3:16-cv-00321-MMD-CBC

**REPORT AND RECOMMENDATION**
**OF U.S. MAGISTRATE JUDGE**

11
12
13

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

14
15
16
17
18
19
20
21

    This case involves a civil rights action filed by Plaintiff Richard R. Gates ("Gates") against Defendants Richard LeGrand, Sheryl Foster, Bruce Harkreader, and Valaree Olivas (collectively referred to as "Defendants"). Currently pending before the Court is a motion for summary judgment filed by Defendant Foster, which was joined entirely by Defendants Harkreader and LeGrand, and in part, by Defendant Olivas. (ECF Nos. 20; 28; 30.) Gates opposed, (ECF No. 31), and Defendants replied (ECF No. 33). Having thoroughly reviewed the record and papers, the Court hereby recommends Defendants' motion for summary judgment, and joinders thereto, be granted.

22

**I.    BACKGROUND AND PROCEDURAL HISTORY**

23

    A.   <u>Procedural History</u>

24
25
26
27

Gates is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at Lovelock Correctional Center ("LCC"). On February 14, 2017, Gates filed his first amended complaint, which asserted three claims for relied (. (ECF No. 5.) Pursuant to 28 U.S.C. § 1915(A)(a), the Court screened Gate's FAC and allowed him

28

to proceed with three claims for relief. (ECF No. 7.)  These claims center on alleged wrongs allegedly suffered by Gates related to his Wiccan religious practices.

Specifically, Gates alleges he was not allowed to possess amber fragrant resin granular incense, which he claims was necessary to his religious practices. Gates asserts that while he was allowed to order the incense by LCC officials, when the incense arrived it was taken by LCC officials. Gates claims Defendant Olivas, a Correctional Officer Lieutenant at NDOC, issued an unauthorized property notification for the incense, informing him the incense was not permitted pursuant to NDOC Administrative Regulation 810, which governs religious faith groups' activities and programs at all NDOC institutions. (ECF No. 7. at 4:9-12.) Gates also claims he filed a grievance with prison officials regarding the unauthorized property notification for the incense and the grievance was denied at each level. (*Id.* at 4:15-16.) Gates alleges Defendant Harkreader, a Correctional Caseworker Specialist at NDOC, denied the informal level grievance; Defendant LeGrand, Warden of Lovelock Correctional Center, denied the first level grievance; and Defendant Foster, Deputy Director of the NDOC, denied the second level grievance. (*Id.* at 4:16-17.)

Based on this conduct, Gates has alleged three Counts: 1) a First Amendment Free Exercise Clause claim against Defendants Olivas, Harkreader, LeGrand, and Foster; 2) a Fourteenth Amendment Equal Protection Clause claim against Defendants Olivas, Harkreader, LeGrand, and Foster; and 3) a Fourteenth Amendment Due Process Clause claim against Defendants Olivas, Harkreader, LeGrand, and Foster. Each Count has been permitted to proceed against Defendants Foster, Harkreader, and LeGrand based solely on their denial of Gate's Grievance No. 2006-29-84240.

B.    Defendants' Motion for Summary Judgment

On August 13, 2018, Defendant Foster filed a motion for summary judgment seeking dismissal of all the claims in this case. (ECF No. 20.) On September 4, 2018, Defendants Harkreader, and Legrand filed a Joinder to Defendant Foster's Motion for Summary Judgment (ECF No. 28.) On September 6, 2018, Defendant Olivas also filed a

Joinder to Defendant Foster's Motion for Summary Judgment. (ECF No. 30). Defendants make a variety of arguments in support of summary judgment.

As to the First Amendment Free Exercise Clause and Fourteenth Amendment Equal Protection Clause claims (Count I and II), Defendants assert summary judgment should be granted because: (1) Gates failed to properly exhaust his administrative remedies (ECF No. 20 at pp. 9 – 16); and (2) Defendants Foster, Harkreader, and LeGrand's actions do not rise to the level of personal participation required by a § 1983 suit (ECF No. 20 at 16 – 18).

As to the Due Process Clause claim (Count III), Defendants assert summary judgment should be granted because: (1) Gates failed to properly exhaust his administrative remedies (ECF No. 20 at pp. 9 – 16); (2) Defendants Foster, Harkreader, and LeGrand's actions do not rise to the level of personal participation required by a § 1983 suit (ECF No. 20 at 16 – 18); and (3) Gates was provided adequate due process procedures when he was deprived of his incense. (ECF No. 20 at pp. 19 – 21.) Finally, as to each claim, Defendants argue even if there are issues of fact on the claims in the FAC, Defendants are entitled to qualified immunity. (ECF No. 20 at pp. 21 – 25.)

In response, Gates argues summary judgment should be denied. (ECF No. 31). First, as to the First Amendment Free Exercise Clause claim, he argues he did exhaust his available administrative remedies when he "cited…AR 810, made request of Chaplain A. Carrasco and Associate Warden of Programs (A.W.P.) Quentin Byrne who were employed at L.C.C. when these events occurred." (ECF No. 31 at p. 2.) As to the Fourteenth Amendment Equal Protection Clause claim, Gates argues he exhausted his available remedies "because incense were allowed previously and then suddenly denied." (ECF No. 31 at p. 2.) As to the Due Process Clause claim, Gates argues he exhausted:

> "by stating in the last paragraph [of grievance number 2006-29-84240] 'I am being held to the strictest letter of AP 810 Faith Group Overview. But certain groups such as Kairos Ultrya, Young Men in Christ and Moorish Science Temple are not even recognized by AP 810 Faith Group Overview. The practitioners of these groups are allowed chapel time to

worship, outside sponsors and to purchase any religious item they want because if they are not recognized by AP 810 Faith Group Overview nothing can be disallowed including, but not limited to, incense.'" (ECF No. 31 at p. 3.)

In addition, Gates asserts Defendants are not entitled to Qualified Immunity because "a supervisor who is aware of an alleged constitutional violation because he or she reviewed an inmate's administrative grievance may be liable if he failed to remedy it." (ECF No. 31 at p. 3.)

In reply, Defendants assert Gates failed to create any genuine dispute of material fact and presents arguments that are incorrect or irrelevant to the issues presented by Defendants Motion for Summary Judgment. In addition, Defendants assert that Gates fails to address several of their arguments made in the Motion for Summary Judgment. Defendants specifically noted Gates failed to follow the exhaustion requirements laid out in AR 740 and 810 prior to filing his grievance. (ECF No. 33, pp. 5 – 6.) Defendants also reassert Defendants Foster, Harkreader, and LeGrand's responses to Gate's grievance does not amount to the level of personal participation required by a § 1983 suit. (ECF No. 33, pp. 6 – 7.) Finally, Defendants reiterate qualified immunity should apply in this case. (ECF No. 33, p. 10.)

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

1    speculative opinions, pleading allegations, or other assertions uncorroborated by facts

2    are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509

3    F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

4    Cir. 1996).  At this stage, the court's role is to verify that reasonable minds could differ

5    when interpreting the record; the court does not weigh the evidence or determine its

6    truth.  *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*

7    *Motorcycle Ass'n*, 18 F.3d at 1472.

8         Summary judgment proceeds in burden-shifting steps.  A moving party who does

9    not bear the burden of proof at trial "must either produce evidence negating an essential

10   element of the nonmoving party's claim or defense or show that the nonmoving party

11   does not have enough evidence of an essential element" to support its case.  *Nissan*

12   *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the

13   moving party must demonstrate, on the basis of authenticated evidence, that the record

14   forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as

15   to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285

16   F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising

17   therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763

18   F.3d 1060, 1065 (9th Cir. 2014).

19        Where the moving party meets its burden, the burden shifts to the nonmoving

20   party to "designate specific facts demonstrating the existence of genuine issues for trial."

21   *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This

22   burden is not a light one," and requires the nonmoving party to "show more than the

23   mere existence of a scintilla of evidence. . . .  In fact, the non-moving party must come

24   forth with evidence from which a jury could reasonably render a verdict in the non-

25   moving party's favor."  *Id.* (citations omitted).  The nonmoving party may defeat the

26   summary judgment motion only by setting forth specific facts that illustrate a genuine

27   dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477

28   U.S. at 324.  Although the nonmoving party need not produce authenticated evidence,

1   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as

2   to the material facts" will not defeat a properly-supported and meritorious summary

3   judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–

4   87 (1986).

5   For purposes of opposing summary judgment, the contentions offered by a *pro se*

6   litigant in motions and pleadings are admissible to the extent that the contents are based

7   on personal knowledge and set forth facts that would be admissible into evidence and

8   the litigant attested under penalty of perjury that they were true and correct.  *Jones v.*

9   *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

10   **III.   DISCUSSION**

11   A.   Civil Rights Claims under Section 1983

12   42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority

13   to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d

14   1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir.

15   2000)). The statute "provides a federal cause of action against any person who, acting

16   under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526

17   U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing

18   substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947

19   F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1)

20   the violation of a federally-protected right by (2) a person or official acting under the color

21   of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff

22   must establish each of the elements required to prove an infringement of the underlying

23   constitutional or statutory right.

24   Defendants argue they are entitled to summary judgment for several reasons.

25   First, Defendants argue that Gates failed to properly exhaust his administrative remedies.

26   (ECF No. 20, at pp. 9 – 16.) Second, Defendants Foster, Harkreader, and LeGrand argue

27   that their actions do not rise to the level of personal participation required for a § 1983

28   suit. (ECF No. 20, at pp. 16 – 18.) Third, Defendants argue that Gates was provided

adequate due process procedures when he was deprived of his incense. (ECF No. 20, at pp. 19 – 21.) In the alternative, Defendants argue that they are entitled to qualified immunity. (ECF No. 20, at pp. 21 – 25.) Each of these arguments will be addressed in turn. [1]

### B.    Exhaustion of Administrative Remedies

An inmate alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983 must exhaust the NDOC's administrative remedies prior to seeking judicial relief. *Munoz v. State*, No. 66977, 2015 WL 5516700, at *1 (Nev. App. Sept. 15, 2015) "[P]roper exhaustion of administrative remedies ... means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted). As noted by the court:

> The point of the PLRA exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court."

*Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir.2010).The Supreme Court held in *Jones v. Bock* that a prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. 549 U.S. at 218, 127 S.Ct. 910.

When an NDOC inmate is requesting new or additional religious services or religious property, the inmate must comply with AR 810.3, the Religious Practice Manual, before his or her claim can be considered properly exhausted. *Country Stevens*, 2011 WL 13240356, at *6-*8. To comply with AR 810.3, the inmate must make a written request to the chaplain, and the chaplain will meet with the inmate and, when deemed necessary,

---

[1]    The Court does not reach Defendants' qualified immunity argument because it decides the case based on failure to exhaust, lack of personal participation, and adequate due process procedures.

will provide the inmate with a Request for Accommodation of Religious Practice Form (DOC 3505), which must then be returned to the chaplain. (Doc. # 104-3 at 16.) The request is reviewed by the Religious Review Team (RRT) (consisting of the warden, chaplain, and deputy attorney general). (*Id.* at 16-17.) In the event the request is denied, the inmate must be notified in writing of the decision and reason for denial, and a copy of the denial is maintained in the inmate's Institutional File which is maintained by the prison. (*Id.* at 17.) To request a new or additional religious service, the inmate must make a written request for consideration by the chaplain. (Doc. # 104-3 at 17-18.)

The NDOC Religious Practice Manual states:

> When any group/individual wishes to have the NDOC add new allowable Faith Group Property and/or Personal Religious Property to the Faith Group Overview, they must use the process set forth within this section. This process must be complete before a grievance is filed pursuant to AR 740, Inmate Grievance Procedure. The request must be made in writing via the Request for Accommodation of Religious Practices Form (DOC 3505). The Request for Accommodation of Religious Practices Form (DOC 3505) must be fully completed and submitted to the Chaplain with all relevant supporting documentation attached (i.e. reasons why the item(s) are religious and needed to practice the religion). The Chaplain/designee will submit the completed Request for Accommodation of Religious Practices From (DOC 3505), and any documentation attached thereto, to the Religious Review Team (RRT).

(ECF No. 20, at Ex.6, (C)(1) – (3).)

### 1.    Counts I and II

Defendants assert that Gates "put NDOC officials on notice that he was not permitted to have his incense but did not put NDOC officials on notice that his religious rights were being violated nor did he put officials on notice that this policy violated the Equal Protection Clause."  (ECF No. 20 at 11.) However, a grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. *Abarra v. State*, 131 Nev. 20, 23, 342 P.3d 994, 996 (2015). A grievance also need not contain every fact necessary to prove each element of an

8

1    eventual legal claim. *Abarra*, 131 Nev. at 23, 342 P.3d at 996. The primary purpose of a

2    grievance is to alert the prison to a problem and facilitate its resolution, not to lay

3    groundwork for litigation. *See Johnson v. Johnson,* 385 F.3d at 522, *cited with approval in*

4    *Jones,* 549 U.S. at 219, 127 S.Ct. 910.

5        In Grievance No. 2006-29-84240, Gate's writes, "When a lowly, single stripe

6    officer, a vengeful, retaliatory Sargent and a known religious discriminatory lieutenant

7    overrules an Associate Warden it is a very clear and serious violation of the chain of

8    command." (ECF No. 20, at Ex. 2, p. 3.) In addition, Gates writes, "You also state in your

9    response that AR 810 Faith Group Overview does not allow any Earth Based Religion to

10   purchase incense. But other religions are allowed to purchase incense." (ECF No. 20, at

11   Ex. 2, p. 3.) Although these statements do not explicitly convey that Gates is claiming a

12   religious freedom, or an equal protection violation, there is at least some indication that

13   Gates may have, in fact, filed a grievance pertinent to the facts and allegations within

14   Count I and II. This should be sufficient to allow prison officials a fair opportunity to

15   address the grievance on the merits, and to correct prison errors that could be corrected.

16   In this case, the court disagrees that Gates has failed to put NDOC on notice as to his

17   religious claims.

18       However, even if the Court finds Gates provided NDOC officials with adequate

19   notice regarding Counts I and II, Gates failed to follow NDOC procedures in challenging

20   the NDOC's religious policies. Gates is requesting that NDOC AR 810 be amended to

21   allow Wiccans to possess and use incense in religious ceremonies. Gates was required

22   to file the DOC 3505 before he could go through the grievance process.

23       Gates mentions in Grievance No. 2006-29-84240 that he submitted a DOC 3528

24   which is an "NDOC Religious Property Request Form." (ECF No. 20, at Ex. 2, p. 5.)

25   Gates was, however, incorrect in his belief that this was the proper form as AR 810.3—

26   Religious Practice Manual—requires inmates to submit a Request for Accommodations of

27   Religious Practices Form (DOC 3505) prior to filing a grievance. (ECF No. 20, at Ex. 6, p.

28   14.) While these forms may sound similar, their purposes are distinct, and they cannot be

1    interchanged. In addition, the NDOC Religious Property Request Form (DOC 3528)

2    makes explicitly clear that inmates should "only order items allowed by [their] declared

3    faith" as "failure to follow this procedure may result in a delay or denial of [their] request."

4    Since amber fragrant resin incense is not on the list of items approved for Wiccans,

5    submitting an NDOC Religious Property Request Form (DOC 3528) was not the proper

6    procedure. Rather, Gates should have filled out a Request for Accommodations of

7    Religious Practices Form (DOC 3505) as outlined in AR 810.3. (ECF No. 20, at Ex. 6, p.

8    14.)

9        As proof that Gates never submitted a DOC 3505, Defendants point out that

10   Chaplain Snyder stated, there is no record of Gates "having submitted a Request for

11   Accommodation of Religious Practices form (DOC 3505) to have amber fragrant resin

12   granular incense approved for his religious practice of being a Wiccan during the period

13   of January 2012 to present." (ECF No. 20, Ex. 7, ¶13.) As such, the RRT has never

14   reviewed or considered Gates' request to have incense approved for use by Wiccan faith

15   group members. (*Id.* at ¶14.) Gates never sought approval via the proper channels to

16   have AR 810.1, Faith Group Overview, amended to allow Wiccans the ability to possess

17   and use incense. Gates failed to follow the NDOC's procedural requirements and did not

18   exhaust his claim for new or additional religious personal property. Gates thus did not

19   properly exhaust Counts I and II.

20               *2.    Count III*

21       Additionally, Defendants assert that Gates did not exhaust Count III because he

22   did not provide NDOC officials with adequate notice regarding his due process claim as

23   alleged. Gates asserts that he did in fact exhaust his administrative remedies as to the

24   alleged due process violation in Grievance No. 2006-29-84240. However, nowhere in

25   Grievance No. 2006-29-84240 does Gates claim that the taking of his incense pursuant

26   to NDOC's regulations violates the Due Process Clause, nor does Gates complain of the

27   processes provided for inmates to grieve Unauthorized Property Notifications.

28

1   Gates mentions in his grievance that he submitted a request to purchase incense,

2   his request was approved, when his package arrived, a corrections officer unauthorized

3   and withheld it, and that he previously purchased incense through the Inmate Canteen.

4   (ECF No. 20, at Ex. 2, pp. 1 – 10.) Proper notice, however, requires an inmate's

5   grievance to alert prison officials to "the nature of the wrong for which redress is sought."

6   *Griffin v. Arpaio,* 557 F.3d 1117, 1120 (9th Cir. 2009). Since Gate's grievance does not

7   alert prison officials that his due process rights were bring violated, it is insufficient to

8   provide NDOC officials with adequate notice regarding his due process claim as alleged

9   in Count III. Thus, Defendants are entitled to summary judgment on Count III because

10  Gates failed to properly exhaust his administrative remedies. For all the reasons listed

11  above, the Court recommends that Defendants' Motion for Summary Judgment as to

12  Count I, II, and III be granted.

13      C.   Personal Participation

14      "There are two elements to a section 1983 claim: (1) the conduct complained of

15  must have been under color of state law, and (2) the conduct must have subjected the

16  plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency*

17  *of Los Angeles*, 733 F.2d 646, 649 (9th Cir.1984). A prerequisite to recovery under the

18  Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived

19  him of a right secured by the Constitution and the laws of the United States. *Gomez v.*

20  *Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a

21  showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045

22  (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of

23  section 1983, if he does an affirmative act, participates in another's affirmative acts, or

24  omits to perform an act which he is legally required to do that causes the deprivation of

25  which [the plaintiff complains*]." Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

26  "[V]icarious liability is inapplicable to…§ 1983 suits, a plaintiff must plead that each

27  Government-official defendant, through the official's own individual actions, has violated

28

11

1    the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L. Ed.

2    2d 868 (2009).

3        Generally, one cannot state a constitutional claim based on their dissatisfaction

4    with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash.

5    2014) Where the defendant's only involvement in the allegedly unconstitutional conduct is

6    "the denial of administrative grievances or the failure to act, the defendant cannot be

7    liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)).

8    However, the issue of whether responding to a grievance can rise to the level of  personal

9    participation required for a § 1983 claim was addressed in *Snow v. McDaniel*, 681 F.3d

10   978 (9th Cir. 2012)., *overruled on other grounds* in *Peralta v. Dillard*, 744 F.3d 1076 (9th

11   Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the

12   denial of a recommended hip surgery; there was testimony that the warden and associate

13   warden were aware of the grievances, and that they had reviewed an order stating that

14   the inmate needed a hip replacement. *Snow*, 681 F.3d at 989. Defendants argued that

15   there was no evidence in the record that they were personally involved in any of the

16   medical treatment decisions. *Id.* The Ninth Circuit, however, said that their review of the

17   grievance was sufficient to demonstrate that the warden and associate warden were

18   aware of the inmate's serious hip condition and failed to act to prevent further harm so

19   that the warden and associate warden were not entitled to summary judgment based on

20   lack of personal participation. *Id.*

21       Foster, Harkreader, and LeGrand's responses to Gates' grievances could be

22   sufficient to meet the personal participation required for a § 1983 suit if, through their own

23   individual actions, they violated the Constitution. However, Gates does not allege that

24   Foster, Harkreader, or LeGrand caused the alleged constitutional violations in Counts I,

25   II, or II, only that they denied his grievance. (ECF No. 5 at pp. 6 – 8.) This does not rise to

26   the level of participation required for a § 1983 suit. Based on lack of personal

27   participation, Foster, Harkreader, and LeGrand are entitled to summary judgment on

28   Counts I, II, and III.

1    D.    Due Process

2        As the Ninth Circuit has made clear, the state may not take property " 'like a thief

3    in the night.' " *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir.2012) (quoting

4    *Clement v. City of Glendale*, 518 F.3d 1090, 1093 (9th Cir.2008)). Because prisoners

5    have a constitutionally protected interest in their personal property, the Fourteenth

6    Amendment guarantees due process to deprivations of inmate property. *Hansen v. May*,

7    502 F.2d 728, 730 (9th Cir.1974). "An agency, such as the NDOC, violates the Due

8    Process Clause of the Fourteenth Amendment when it prescribes and enforces

9    forfeitures of property '[w]ithout underlying [statutory] authority and competent procedural

10   protections.' " *Nevada Dep't of Corrs. v. Greene*, 648 F.3d 1014, 1019 (9th Cir.2011)

11   (quoting *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir.2003)). Because the

12   constitutional violation is the state's failure to provide due process, rather than the taking

13   or loss itself, "it is necessary to ask what process the State provided, and whether it was

14   constitutionally adequate. This inquiry ... examine[s] the procedural safeguards built into

15   the statutory or administrative procedure effecting the deprivation, and any remedies for

16   erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113,

17   125–26 (1990).

18        Although pre-deprivation process is favored where possible, a post-deprivation

19   hearing, or a common-law tort remedy for erroneous deprivation, may satisfy due process

20   in some circumstances. *Id.* at 128. When determining whether post-deprivation remedies

21   preclude liability under the Fourteenth Amendment, courts distinguish between

22   unauthorized deprivations and authorized, intentional deprivations. Neither negligent nor

23   intentional unauthorized deprivations of property by prison officials are actionable under §

24   1983 when the state provides a post-deprivation remedy. *Hudson v. Palmer*, 468 U.S.

25   517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir.1985). In contrast, an

26   authorized, intentional deprivation of property is actionable under the Due Process

27   Clause, irrespective of post-deprivation remedies. "Authorized" deprivations are those

28   carried out pursuant to a state's established procedures, regulations, or statutes, *see*

1   *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36 (1982), and also those conducted

2   under the apparent authority of state procedures, regulations, or statutes, see *Piatt v.*

3   *MacDougall*, 773 F.2d 1032, 1036 (9th Cir.1985).

4       Even if the Court determined that Gates did exhaust his remedies as to Count III,

5   Defendants are still entitled to summary judgement because Gates was provided

6   adequate due process protections when his incense was deemed unauthorized by NDOC

7   officials and confiscated. Gate's Grievance No. 2006-29-84240 requests only that the

8   incense be returned as he believes he was permitted to purchase and possess the

9   incense. (Ex. 2 at 8, 10-11.) Gates is thus grieving the taking of the incense, but not any

10   of the processes or regulations permitting the confiscation of the incense. Even

11   acknowledging as much, a due process claim does not concern the taking of property,

12   but instead the processes allowing the taking of property and the adequacies of those

13   processes.

14       In *Reece*, this Court held that NDOC AR 711 and AR 711.01 and the procedures

15   outlined therein satisfy due process requirements. *Reece v. Shepherd*, No. 3:14-CV-

16   00192-MMD-VPC, 2015 WL 5813243, at *4. This Court held that AR 711.01's procedures

17   of notifying the inmate with an Unauthorized Property Notification and providing the

18   inmate options in disposing of the property or appealing the Unauthorized Property

19   Notification via the grievance process satisfies due process protections. Id. "No differently

20   than held the *Greene* court, an opportunity to use the NDOC's grievance process in such

21   circumstances 'is all the process that is due.'" Id. (quoting *Greene*, 648 F.3d at 1019).

22   Because such deprivations are authorized by state law (and thus cannot be cured by

23   post-deprivation remedies), the process outlined in AR 711—namely, utilization of AR

24   740's grievance procedures—provides critical procedural protections to inmates well in

25   advance of the final confiscation or destruction of personal items. Due process requires

26   nothing more. Reece, 2015 WL 5813243, at *5.

27       Thus, the procedures provided to Gates, as outlined in AR 711 and 711.01, have

28   been found to satisfy due process requirements. Further, in Grievance No. 2006-29-

84240, Gates doesn't even reference the procedures allowing the deprivation of property nor does he make any references to the constitutional adequacies of those procedures. Accordingly, Gates did not grieve, let alone exhaust, his due process claim as alleged in Count III. Since officials made available to Gates adequate procedural protections by which he could have contested the decision to deem the property unauthorized, Count III must be dismissed pursuant to the PLRA and Defendants are entitled to summary judgment as a matter of law.

## IV.   CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' motion for summary judgment, and the joinders thereto, be granted. The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment and the joinders thereto (ECF Nos. 20; 28; 30) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that judgment should be entered accordingly.

**DATED**: January 28, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**