UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RICHARD R. GATES,<br><br>                  Plaintiff,<br>    v.<br><br>R. LEGRAND, *et al.*,<br><br>                  Defendants. | Case No. 3:16-cv-00321-MMD-CBC<br><br>ORDER |

**I.    SUMMARY**

Plaintiff Richard R. Gates alleges violations of his First and Fourteenth Amendment rights because amber fragrant resin granular incense ("Incense") was taken from him after he was permitted to order it while in the custody of the Nevada Department of Corrections ("NDOC"). Plaintiff alleges he needs the Incense to practice his Wiccan faith. Before the Court is the Report and Recommendation ("R&R" or "Recommendation") of Magistrate Carla Baldwin Carry (ECF No. 43) relating to Defendants' motions for summary judgment (ECF Nos. 20, 28, 30).[1] Plaintiff filed an objection ("Plaintiff's Objection") to the R&R.[2] (ECF No. 46.) Also before the Court is another objection Plaintiff filed regarding Judge

---

[1] Defendant S.L. Foster initially filed a motion for summary judgment. (ECF No. 20.) Defendants B. Harkreader and R. Legrand then filed another motion for summary judgment in which they join and substantially adopt all of the arguments advanced by Foster in his motion. (ECF No. 28.) Then Defendant V. Olivas filed a joinder to Foster's motion for summary judgment, where she joins all of Foster's arguments in his motion except for his argument that he did not personally participate in Plaintiff's alleged constitutional deprivations. (ECF No. 30.) The Court considers the motions together. Thus, to the extent necessary, the Court grants Olivas' request for joinder. (ECF No. 30.) Further, Plaintiff filed a consolidated response to the motions for summary judgment. (ECF No. 31.) Defendants then filed a consolidated reply in support of their earlier motions. (ECF No. 33.)

[2] Defendants did not file a response to Plaintiff's Objection, and the response deadline has passed.

Carry's denial of his motion for leave to file a supplemental complaint.[3] (ECF No. 46.) For the following reasons, the Court will accept in part, and reject in part, the R&R—which will ultimately permit Plaintiff's Count II, alleging an equal protection violation, to proceed past the summary judgment phase. However, the Court will grant Defendants summary judgment as to Plaintiff's Count I, alleging a free exercise clause violation, on qualified immunity grounds. Further, the Court will accept Judge Carry's recommendation as to Plaintiff's Count III, alleging a due process violation, because Plaintiff was provided with adequate due process, as Judge Carry explained in the relevant portion of the R&R. In addition, the Court will overrule Plaintiff's objection to Judge Carry's denial of his motion to file a supplemental complaint because the allegations in his proposed supplemental complaint are distinct from his allegations in this case.

## II.     BACKGROUND

### A.     Relevant Facts

The following facts are undisputed unless otherwise indicated.

Plaintiff is an inmate in NDOC's custody. (ECF No. 20 at 4.) At all times relevant to this case, he was an inmate at Lovelock Correctional Center in Lovelock, Nevada ("LCC"). (*Id.*) Certain religions are officially recognized at LCC. (ECF No. 20-5 at 5 (listing religions officially recognized by LCC).) LCC inmates can petition LCC to officially recognize new religions by submitting a form to the Religious Review Team ("RRT"). (ECF No. 20-6 at 7, 13-15.) Upon intake, inmates at LCC must fill out a form declaring their affiliation with a particular religion. (*Id.* at 11.) Once a religion is officially recognized, and if an inmate has declared his affiliation with that religion, the inmate can order certain religious items, divided into group use and personal use categories. (*Id.* at 27-29.) Each officially recognized religion has a list of religious items that adherents of that faith may order. (*Id.*) To order permitted religious items, an inmate must complete a Religious Property Request Form (DOC 3528), which goes to the Chaplain and then an Associate Warden for approval

---

[3] Judge Carry denied Plaintiff's motion (ECF No. 36) on January 28, 2019 (ECF No. 44).

before the prisoner may order their requested religious items. (*Id.* at 29.) If an inmate requires a religious item not on the approved list for his religion to practice his religion, he can petition the RRT to add that item to his religion's approved list by completing a Request for Accommodation of Religious Practices Form (DOC 3505). (*Id.* at 15-16.)

Plaintiff is a practicing Wiccan. (ECF No. 5 at 3.) LCC officially recognizes Wicca as a religion. (ECF No. 20-5 at 5.) In January 2014, Plaintiff requested and received approval from the Chaplain and Associate Warden of LCC to purchase religious items. (ECF No. 5 at 3.) Plaintiff placed an order and ultimately received these religious items, which included Incense. (*Id.* at 3-4.)

In July 2014, Plaintiff requested and received approval from the Chaplain and Associate Warden of LCC to purchase another religious package. (*Id.* at 4-5.) In August 2014, when the religious package arrived, Defendant Olivas issued an unauthorized property notification for the Incense, chamomile flower, and peppermint leaf contained in the package because they were not permitted under NDOC's AR 810 (NODC's administrative regulations governing the exercise of religion at LCC). (*Id.* at 5.) After Plaintiff contacted Defendant Harkreader, Harkreader spoke to Olivas. (*Id.*) After Harkreader's conversation with Olivas, Plaintiff received his peppermint leaf as permissible under AR 810, and relinquished the chamomile flower because it was not permitted under AR 810. (*Id.*) However, Olivas and Harkreader did not allow Plaintiff to keep the Incense because it was not an item that Wiccans at LCC are allowed to purchase under the applicable regulations. (*Id.* at 5.)

Plaintiff timely grieved the unauthorized property notification for the Incense to prison officials through grievance 2006-29-84240 (the "Grievance"). (*Id.*; *see also* ECF No. 20 at 4, ECF No. 20-2 (Grievance No. 2006-29-84240).) In the Grievance, Plaintiff complained that his Incense had been taken from him even though the chaplain approved its purchase, and he had been able to purchase it in the past. (ECF No. 20-2 at 9, 11-12.) He asked for the remainder of his religious property (the Incense) to be returned to him.

(*Id.* at 12.) Harkreader denied the informal grievance, LeGrand denied the appeal; and Foster denied the next level appeal. (ECF No. 5 at 5-6.)

In his denial of Plaintiff's informal grievance, Harkreader explained his denial as follows:

> "I have investigated your grievance and affirm that you have been allowed to have most of the items from your package. At this juncture, I have been advised that you will be receiving your peppermint and, as soon as an inventory of your religious items is completed, you will receive your medallions. I have also contacted the Chaplains Office and verified that in accordance with AR 810.4, incense is not an authorized item. As this is the case, you will not be allowed to receive that item. Grievance denied."

(ECF No. 20-2 at 10.) Plaintiff appealed Harkreader's informal grievance denial. (*Id.* at 5, 7-8.) LeGrand denied Plaintiff's appeal. LeGrand explained his denial of Plaintiff's first level grievance as follows:

> "I have reviewed your grievance and will concede that you were granted the incense in the past; this was an error on our part and I will allow you to retain any of the material you currently have in your possession. However, after reviewing AR 810.4 Religious Property Inventory and AR 810.1 Faith Group Overview; Earth Based religions are not permitted incense. You may wish to request consideration for this item through the RRT, but until there is a change in AR 810 you will not be allowed to purchase incense. Grievance denied.

(*Id.* at 6.) Plaintiff appealed LeGrand's first level grievance denial. (*Id.* at 2, 4.) In that appeal, Plaintiff contended that LCC's administrative regulations were being applied selectively to Wiccans, arguing that other religions were allowed to purchase incense, and that some religious groups that were not officially recognized by LCC (again, Wiccans are officially recognized) were allowed to use the chapel and receive some other benefits that officially recognized religions receive at LCC, including the ability to purchase religious items. (*Id.* at 4.) Foster denied Plaintiff's appeal. Foster explained his reasons for denying Plaintiff's second level grievance as follows:

> "I have reviewed your grievance at both the first and informal levels. The administration has the authority to work within the parameters of the Administrative Regulations and to establish Operational Procedures to address the needs of each institution. They do not, however, have the authority to approve items that are not approved by the Administrative Regulations. It was conceded that errors were made regarding your being permitted to order unauthorized material (incense) and that what you

4

> currently have in your possession will not be confiscated. Now that the error has been identified you will not be allowed to receive the unauthorized material that you have currently ordered, or any future purchases. Grievance denied."

(*Id.* at 3.) Plaintiff then filed his Complaint in this action. (ECF No. 5.)

The Court screened Plaintiff's Complaint, and permitted all three of his alleged counts to move forward. (ECF No. 7.) Regarding Count I, the Court wrote:

> The Court finds that Plaintiff states a colorable free exercise of religion claim. Based on the allegations, Plaintiff is a Wiccan who needs amber resin to practice his religion. Based on the allegations, prison officials denied his ability to have amber resin in August 2014. This claim will proceed against Defendants Olivas, Harkreader, LeGrand, and Foster.

(*Id.* at 5.) Regarding Count II, the Court wrote:

> The Court finds that Plaintiff states a colorable equal protection claim. Based on the allegations, prison officials permitted Buddhist, Roman Catholic, and Jewish inmates to possess granular resin incense for their religions but did not permit the Wiccan inmates to do so. This claim will proceed against Defendants Olivas, Harkreader, LeGrand, and Foster.

(*Id.* at 5-6.) Regarding Count III, the Court wrote:

> The Court finds that Plaintiff states a colorable due process claim. Based on the allegations, prison officials deprived Plaintiff of his amber resin in an authorized manner pursuant to the administrative regulations. As such, this claim will proceed against Defendants Olivas, Harkreader, LeGrand, and Foster.

(*Id.* at 6.) The Court also dismissed several defendants without prejudice in the screening order. (*Id.* at 7.)

B. **Summary Judgment Proceedings**

Defendants moved for summary judgment on several, alternative, bases. (ECF Nos. 20, 28, 30.) First, Defendants argued Plaintiff failed to exhaust all three of his Counts because he failed to fairly put the NDOC on notice of his claims in his Grievance. (ECF No. 20 at 9-10, 15-16.) Second, Defendants argued Plaintiff failed to exhaust Counts I and II because he did not comply with NDOC's procedures; specifically, he got his Incense by completing a Religious Property Request Form (DOC 3528), and not by first completing a Request for Accommodation of Religious Practices Form (DOC 3505). (*Id.* at 12-14.) Third, Defendants Foster, LeGrand, and Harkreader—but not Olivas—argued that

1 Plaintiff's allegations against them fail because they did not personally participate in
2 Plaintiff's alleged constitutional violations. (*Id.* at 16-18; *see also* ECF Nos. 28, 30.) Fourth,
3 Defendants argued that Plaintiff claims in Count III fail as a matter of law because he was
4 provided with adequate due process when his Incense was deemed unauthorized and
5 taken from him. (ECF No. 20 at 19-21.) Fifth, all Defendants argued they are entitled to
6 qualified immunity with respect to Plaintiff's allegations in all three of his counts. (ECF Nos.
7 20 at 21-25, 28 at 9, 30 at 1.)

8       Judge Carry recommended granting summary judgment in favor of Defendants on
9 all three Counts. (ECF No. 43.) Judge Carry specifically recommended granting summary
10 judgment to Defendants regarding Counts I and II on exhaustion grounds, because
11 Plaintiff never filled out a Request for Accommodations of Religious Practices Form (DOC
12 3505) regarding the Incense before placing his request to order religious items including
13 the Incense. (*Id.* at 7-10.) She also recommended granting summary judgment to
14 Defendants on Count III on exhaustion grounds because Plaintiff's Grievance did not put
15 NDOC officials on notice that he was alleging his due process rights had been violated.
16 (*Id.* at 10-11.) Judge Carry alternatively recommended granting summary judgment to
17 Foster, Harkreader, and LeGrand summary judgement as to all three Counts on the basis
18 of lack of personal participation—merely responding to grievances. (*Id.* at 11-12.) Further,
19 Judge Carry alternatively recommended granting summary judgment to Defendants as to
20 Count III because Plaintiff was provided adequate due process regarding the confiscation
21 of his Incense. (*Id.* at 13-15.)

22       Plaintiff's Objection raises several arguments. (ECF No. 45.) Plaintiff first argues
23 that Judge Carry did not read the exhibits submitted by the parties because she
24 inaccurately quoted LCC's administrative regulations regarding religious practices.[4] (*Id.* at

---

[4] Having reviewed the R&R, the applicable regulations, and Plaintiff's Objection, it does not appear to the Court that Judge Carry inaccurately quoted any administrative regulations. Thus, the Court overrules this objection.

6

1-2.) He next argues that NDOC's regulations are being selectively enforced against Wiccans.[5] (*Id.* at 2-3.) He then argues that Judge Carry's recommendation to grant summary judgment to Defendants on Count III on exhaustion grounds is erroneous because he sufficiently put NDOC on notice of his due process claim in his Grievance. (*Id.* at 3.) He also argues that the Court's earlier screening order let his claims proceed, and appears to suggest that therefore those claims should survive summary judgment.[6] (*Id.* at 3-4.) Finally, Plaintiff objects to Judge Carry's recommendation that Foster, Harkreader, and LeGrand be granted summary judgment for lack of personal participation. (*Id.* at 4-5.) The Court addresses what it views as the most pertinent of Plaintiff's objections below as it analyzes Plaintiff's claims and Defendants' arguments in support of summary judgment. The Court notes Plaintiff does not, however, object to Judge Carry's recommendation that Defendants be granted summary judgment as to Count III because Plaintiff was provided adequate due process when his Incense was confiscated. The Court will accordingly adopt this recommendation, as the Court agrees with Judge Carry's analysis on this point.

**C. Plaintiff's Objection to Judge Carry's Denial of His Motion to Supplement**

Separately, Plaintiff filed a motion for leave to file a supplemental complaint. (ECF No. 36.) However, Plaintiff's proposed supplemental complaint relates to his request that NDOC allow him to celebrate one or more particular Wiccan holidays on particular days, which was denied. (*Id.* at 1-7.) Judge Carry denied Plaintiff's motion. (ECF No. 44.) Plaintiff objects to Judge Carry's denial of his motion primarily because, he argues, his proposed

---

[5]The Court acknowledges this objection, but neither sustains nor denies it, as it is not a specific objection to Judge Carry's Recommendation. To the extent Plaintiff is opposing the grant of summary judgment to Defendants on his equal protection claim by this argument, the Court directs Plaintiff *infra* to Section IV.A.3.b, which addresses his equal protection claim.

[6]The Court also overrules this objection. The Court advises Plaintiff that different standards apply at screening than the standards that apply at summary judgment. One way of explaining this difference is that, at screening, the Court liberally construes the allegations and assumes that everything the plaintiff alleges is true, but at summary judgment, the Court considers the undisputed evidence presented to the Court. (*See* summary judgement standards included *infra* in Section III.B.) Said another way, just because the Court allows certain claims to proceed past screening, that does not mean a plaintiff's claims will survive summary judgment, or that the plaintiff will win at trial.

supplemental complaint relates to his claims in this case—because NDOC's denial of his request to celebrate one or more Wiccan holidays on the days of those holidays also violates his free exercise of religion under the First Amendment. (ECF No. 46.) The Court addresses Plaintiff's objection below.

## III. LEGAL STANDARDS

### A. Review of the Magistrate Judge's Recommendations

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *Id.* Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection."). Thus, if there is no objection to a magistrate judge's recommendation, then the Court may accept the recommendation without review. *See, e.g.*, *Johnstone*, 263 F. Supp. 2d at 1226 (accepting, without review, a magistrate judge's recommendation to which no objection was filed). In light of Plaintiff's Objection, the Court will conduct a *de novo* review of Judge Carry's R&R.

### B. Summary Judgment Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Defendants' Motions for Summary Judgment

Following a *de novo* review of all of the materials submitted in connection with Defendants' motions for summary judgment, the Court disagrees with some of the analysis and some of the conclusions Judge Carry reached in the R&R. Thus, the Court will accept in part, and reject in part, the recommendations contained in the R&R. Using a framework built from a combination of Plaintiff's claims and the arguments Defendants presented in their summary judgment motions, the Court below explains its agreements and disagreements with the R&R—and Plaintiff's objections to it where appropriate—in ruling on Defendants' underlying summary judgment motions.

#### 1. Exhaustion

The R&R agreed with Defendants' argument that they are entitled to summary judgment as to Plaintiff's Counts I and II because Plaintiff failed to exhaust his administrative remedies when he failed to request his Incense by first filling out a Request for Accommodations of Religious Practices Form (DOC 3505).[7] (ECF No. 43 at 9-10.) The Court disagrees.

///
///

---

[7] However, Judge Carry rejected Defendants' exhaustion argument that Plaintiff's Grievance did not properly put NDOC on notice of the nature of his claims—for violation of his rights under the free exercise clause, and an equal protection clause violation. (ECF No. 43 at 8-9.) The Court agrees with Judge Carry's rejection of this argument. Regarding Plaintiff's free exercise claim, Plaintiff mentions a "religious discriminatory sergeant" in his Grievance, and is clearly upset throughout his Grievance that he is not permitted to have his Incense even though the Chaplain approved his request to order it. (ECF No. 20-2 at 4; *see generally id.*) This suffices to put NDOC officials at LCC on notice of "the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Similarly, regarding his equal protection claim, Plaintiff mentions in his Grievance that adherents of other religions are allowed to purchase incense, but adherents of Earth Based Religions are not, which he follows up by saying "I am being held to the strictest letter of AR 810 Faith Group Overview." (ECF No. 20-2 at 4.) This suffices to put NDOC officials on notice that Plaintiff alleges adherents of his religion at LCC are being treated less favorably than adherents of other religions at LCC. Further, for these same reasons, the Court finds that Plaintiff sufficiently exhausted his due process claim in Count III. The Court accordingly rejects that portion of the R&R. (ECF No. 43 at 10-11.)

Here, there is no dispute that Plaintiff went through LCC's entire grievance procedure regarding the confiscation of his Incense in his Grievance. Instead, Defendants argue, and Judge Carry agreed, that Plaintiff filled out the wrong form at the outset of his attempt to order the Incense—long before its confiscation and Plaintiff's Grievance—and that means he failed to exhaust his administrative remedies. (ECF Nos. 20 at 12-15, 43 at 9-10.) The Court finds this expects too much of Plaintiff, and appears to conflate the merits of Plaintiff's claim with the requirement that he exhaust his administrative remedies.

To start, "[p]risoners need comply only with the prison's own *grievance procedures* to properly exhaust under the PLRA." *Griffin*, 557 F.3d at 1119 (citation omitted, emphasis added). Again, here, Plaintiff complied with LCC's grievance procedures, which are found at AR 740. (ECF No. 20-10.) Defendants rely on the procedures in AR 810 governing the exercise of religion, not the procedures in AR 740 governing the filing of grievances.[8] (*See e.g.* ECF No. 20 at 11-15.)

Moreover, the Court must consider the particular circumstances of Plaintiff's case in determining whether he properly exhausted his administrative remedies. *See Fuqua v. Ryan*, 890 F.3d 838, 850 (9th Cir. 2018). Considering the particular circumstances of Plaintiff's case, the Court finds that he sufficiently exhausted his administrative remedies. It appears Plaintiff filled out the Religious Property Request Form (DOC 3528), without first completing a Request for Accommodation of Religious Practices Form (DOC 3505)

---

[8]Defendants contend that the procedures in AR 740 may only be used "to resolve addressable inmate claims[]" and Plaintiff "must go through the process of submitting a DOC 3505 to the RRT before he [] can file a grievance via AR 740." (ECF No. 20 at 13.) However, Defendants cannot now trot out DOC 3505 to end Plaintiff's case where they never directly raised that procedural defect in responding to Plaintiff's Grievance, and instead responded to it on the merits. *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) ("[A] a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process."). Here, while LeGrand mentioned in his denial of Plaintiff's first-level grievance that Plaintiff "may wish to request consideration for this item through the RRT" (ECF No. 20-2 at 6), he did not tell Plaintiff that Plaintiff must do so. Indeed, Plaintiff appealed LeGrand's denial, and that appeal was also denied on the merits. (*Id.* at 3.) Thus, Plaintiff sufficiently exhausted his claims in Counts I and II under *Reyes*. *See Reyes*, 810 F.3d 659 (holding the plaintiff sufficiently exhausted his administrative remedies).

11

because he had been able to use DOC 3528 to order Incense in the past. Plaintiff had been approved to order—and received—incense in January 2014 using that form. (ECF No. 20-2 at 18-22.) Further, the Chaplain and the Associate Warden approved Plaintiff's order made using DOC 3528 that included Incense in July 2014. (ECF No. 20-2 at 13-16.) Thus, it was reasonable for Plaintiff to believe he could order Incense using DOC 3528. So was Plaintiff's apparent, related belief that Incense was not a new item that would have required him to use DOC 3505. Further, in opposition to Defendants' motions for summary judgment (ECF No. 31 at 2-3), Plaintiff proffered a prior version of LCC's Faith Group overview document that appears to allow Wiccans to possess and use incense "during special ceremonies and under proper safety and security conditions," which supports his argument that he was able to order incense in the past. (*Id.* at 42.) Under these circumstances, the purported need for Plaintiff to have filed a DOC 3505 before ordering his Incense was essentially unknowable. *See Fuqua*, 890 F.3d at 850 ("Under the particular circumstances of [the plaintiff's] case, we do not hesitate to conclude that [prison officials'] expectation that [plaintiff] would exhaust his religious accommodation claim by pursuing a grievance pursuant to D.O. 802, while simultaneously pursuing a D.O. 803 disciplinary appeal, is precisely the sort of "essentially 'unknowable'" procedure that the *Ross* Court had in mind."). Therefore, Plaintiff properly exhausted his administrative remedies regarding Counts I and II. *See id.*

For these reasons, the Court rejects the applicable portion of the R&R (ECF No. 43 at 8-10), and denies Defendants' motions for summary judgment to the extent they are premised on Plaintiff's failure to exhaust his administrative remedies.

### 2. Personal Participation

Judge Carry also recommended that summary judgment be granted to Foster, Harkreader, and LeGrand because they did not personally participate in Plaintiff's alleged

constitutional violations—they merely denied his grievances.[9] (*Id.* at 11-12.) The Court disagrees with Judge Carry's analysis and will therefore reject the relevant portion of the R&R. More specifically, the Court finds that questions of material fact remain as to each of these three Defendants' personal participation in Plaintiff's alleged constitutional violations, precluding summary judgment in their favor on this basis.

Here, the Grievance itself shows that Harkreader, LeGrand, and Foster conducted their own investigations into Plaintiff's complaints before reaching their decisions to uphold the confiscation of his Incense. (ECF No. 20-2 at 3 (Foster), 6 (LeGrand), 10 (Harkreader).) Harkreader appears to have served as a go-between in negotiating with Olivas and Plaintiff to get Plaintiff his peppermint back, and convincing him to surrender his chamomile flower. (ECF No. 5 at 5.) He also contacted the Chaplain's Office to verify that Incense was not an authorized item for Wiccans. (ECF No. 20-2 at 10.) Thus, he was personally involved in the decision to uphold the confiscation of Plaintiff's Incense. The factual question that remains is whether he was sufficiently involved to be liable under 42 U.S.C. § 1983. Similarly, while LeGrand and Foster appear less involved in the decision to uphold the confiscation of Plaintiff's Incense than Harkreader, their grievance responses indicate they conducted their own investigations under the applicable regulations before deciding to uphold the confiscation of the Incense. (ECF No. 20-2 at 3, 6.) A question of material fact accordingly remains as to whether all three of these Defendants sufficiently personally participated in Plaintiff's alleged constitutional violations to be held liable for them under Section 1983. *See Snow v. McDaniel*, 681 F.3d 978, 989-990 (9th Cir. 2012), *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076, 1083-84 (9th Cir. 2014) (reversing district court's grant of summary judgment to various defendants on the basis of lack of personal participation, finding fact issues precluded summary judgment, where

---

[9]The Court notes Judge Carry made no recommendation as to the personal participation of Olivas. Olivas did not join the other Defendants' personal participation argument. (ECF No. 30 at 1.)

13

the defendants denied the plaintiff's grievances but were aware of the plaintiff's serious hip condition).

Further, the Court disagrees with Judge Carry's statement in the R&R upon which she based her recommendation to grant summary judgment to these three Defendants for lack of personal participation. She wrote, "Gates does not allege that Foster, Harkreader, or LeGrand caused the alleged constitutional violations in Counts I, II, or II, only that they denied his grievance." (ECF No. 43 at 12.) However, Plaintiff alleges in his operative complaint that Harkreader, Foster, and LeGrand "were made aware by the text of the grievance that this deprivation is Constitutional in nature. And continued to deny petitioner his properly approved and purchased religious property."[10] (ECF No. 5 at 6.) Thus, Plaintiff alleges slightly more than these three Defendants merely denied his grievances. And this *may* be enough for Plaintiff to establish Harkreader, Foster, and LeGrand's personal participation in his alleged constitutional violations.[11] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). As such, the Court rejects this portion of the R&R (ECF No. 43 at 12) and finds a factual issue remains for trial as to whether Harkreader, LeGrand, and Foster sufficiently personally participated in Plaintiff's alleged constitutional violations to render them liable under Section 1983.

### 3. Qualified Immunity

Having rejected Defendants' arguments they are entitled to summary judgment as to Count I—free exercise clause claim[12]—and Count II—equal protection claim—based

---

[10] Further, Plaintiff's three enumerated Counts explicitly incorporate by reference the paragraph from which this sentence is quoted. (ECF No. 5 at 6-7.)

[11] Plaintiff argues as much in his Objection. (ECF No. 45 at 4.)

[12] As construed by the Court in the screening order, this claim is that Plaintiff needs Incense to practice his religion, and Defendants violated his free exercise clause rights by confiscating his Incense. (ECF No. 7 at 5 ("Plaintiff is a Wiccan who needs amber resin to

on exhaustion and lack of personal participation, the Court addresses Defendants' alternative argument that they are entitled to qualified immunity.[13]

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Generally, courts apply a two-step analysis to determine whether qualified immunity applies to bar certain claims. First, a court decides whether the facts *as alleged by the plaintiff* make out a violation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added), *holding modified by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, the court decides whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. The burden to establish that a right was "clearly established" at the time of the alleged misconduct rests with the plaintiff. *See Greene v. Camreta*, 588 F.3d 1011, 1031 (9th Cir. 2009), *vacated on other grounds as noted in Greene v. Camreta*, 661 F.3d 1201 (9th Cir. 2011). If there is no constitutional violation, the inquiry ends, and the officer is entitled to qualified immunity. *See Katz*, 533 U.S. at 201.

### a.  Count I

Here, all four Defendants are entitled to qualified immunity because there was no constitutional violation. The parties have not presented—and the Court has been unable

---

practice his religion. Based on the allegations, prison officials denied his ability to have amber resin in August 2014.").)

[13]Judge Carry did not address this argument in the R&R because she found Defendants were entitled to summary judgment on this Count for other reasons. (ECF No. 43 at 7 n.1). All four Defendants (Olivas, Harkreader, LeGrand, Foster) argue they are entitled to summary judgment on Plaintiff's Count I on the basis of qualified immunity. (ECF Nos. 20 at 21-25, 28 at 9, 30 at 1.)

to locate—any case establishing that Wiccans have a First Amendment right to use and possess incense.[14] Therefore, confiscating Plaintiff's Incense pursuant to LCC's policy cannot have amounted to a violation of Plaintiff's First Amendment rights under the free exercise clause, and the Court must grant summary judgment to Defendants on Plaintiff's Count I.

### b. Count II

The Court finds that Defendants are not entitled to summary judgment on Plaintiff's equal protection clause claim in Count II. First, the Court accepts as true for qualified immunity purposes Plaintiff's allegation as construed in the Court's prior screening order that Wiccans at LCC are not allowed to use and possess incense, but adherents of other religions at LCC are allowed to use and possess incense. (ECF No. 7 at 5-6.) *See also Katz*, 533 U.S. at 201 (providing this is traditionally the first step of the analysis). The equal protection clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, (1985). Especially drawing all inferences in Plaintiff's favor as the nonmoving party, Defendants cannot convincingly dispute that registered adherents of different, officially-recognized religions at LCC are not similarly situated. Further, Defendants do not appear to dispute Plaintiff's allegation that adherents of other religions at LCC are allowed to possess and use incense, but Wiccans are not. (ECF No. 5 at 7-8; *see also* ECF No. 20.) Thus, it

---

[14]Defendants mention they were unable to locate any caselaw directly on point and rely on the analogous case *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013), where the Ninth Circuit held that a prison's decision not to hire a full-time, paid Wiccan chaplain did not violate the Wiccan plaintiff's First Amendment rights under the free exercise clause, to argue Wiccans have no First Amendment right to possess and use incense. (ECF No. 20 at 23-24.) While not directly on point, the Court agrees *Hartmann* supports Defendants' argument that confiscating Plaintiff's Incense does not violate Plaintiff's First Amendment rights. Plaintiff does not offer any argument supported by citations to caselaw in opposition to Defendants' motions for summary judgment—or in Plaintiff's Objection—that Wiccans have a First Amendment right to use and possess incense. (ECF Nos. 30, 45.) That said, in his Complaint, Plaintiff states that he needs the Incense to practice his Wiccan faith. (ECF No. 5 at 6.) However, the books Plaintiff cites are not caselaw. (*Id.*) Thus, neither party cited any caselaw establishing that Wiccans have a First Amendment right to use and possess incense, but *Hartmann*, upon which Defendants rely, weighs in favor of the Court's finding that Wiccans have no First Amendment right to possess and use incense.

16

appears that LCC's administrative regulations on religion treat different religions differently. Said otherwise, accepting Plaintiff's allegations as true, Plaintiff has made out a violation of his constitutional right to equal protection under the law.

Second, the Court finds that Plaintiff's right under the equal protection clause to be treated similarly to registered adherents of other religions officially recognized at LCC was clearly established at the time Plaintiff's Incense was confiscated. *See Katz*, 533 U.S. at 201 (providing this is the second step in the qualified immunity analysis). Indeed, NDOC's AR 810.3—the Religious Practice Manual—explicitly states that all religions will be treated equally by NDOC, though all requests for religious accommodation are subject to balancing against NDOC's undeniably important safety and security interests. (ECF No. 20-6 at 4.) Further, Defendants do not even argue they were unaware that they had to treat different religious groups at LCC alike at the time Plaintiff's Incense was confiscated. (ECF No. 20 at 21-25.) On the evidence before the Court at this time, drawing all reasonable inferences in the nonmoving party's favor, the Court cannot therefore say as a matter of law that Defendants are entitled to qualified immunity on Plaintiff's equal protection claim. The Court will thus deny Defendants' motions for summary judgment as to Plaintiff's Count II.

### 4.     Count III

Judge Carry also recommended granting summary judgment to Defendants on the merits of Plaintiff's due process claim (Count III). (ECF No. 43 at 13-15.) As the Court agrees Defendants are entitled to summary judgment on the merits of Plaintiff's due process claim, and agrees with Judge Carry's analysis (*id.*), the Court accepts and adopts Judge Carry's Recommendation to grant summary judgment to Defendants on Plaintiff's Count III for the reasons stated in the R&R. The Court will accordingly grant summary judgment to Defendants on Plaintiff's Count III.

### B.     Plaintiff's Motion to File a Supplemental Complaint

Separately, and in addition, Plaintiff objects to Judge Carry's denial of his motion for leave to file a supplemental complaint. (ECF Nos. 44 (order denying motion), 46

(objection).) Having conducted a *de novo* review of the parties' briefing submitted in connection with Plaintiff's motion, the Court agrees with Judge Carry. As such, the Court overrules Plaintiff's objection. (ECF No. 46.)

"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). "While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action[.]" *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal citations, quotation marks, and punctuation omitted).

Here, Judge Carry denied Plaintiff's motion for leave to file a supplemental complaint because "Plaintiff's allegations in his supplemental complaint are unrelated to the current cause of action." (ECF No. 44.) The Court agrees. Plaintiff's allegations in his proposed supplemental complaint allege different causes of action against different defendants than those in this case, and are based on LCC officials' denial of his request to celebrate certain Wiccan holidays on certain days. (ECF No. 36.) Thus, it would be inappropriate to grant Plaintiff leave to file his proposed supplemental pleading. *See Neely*, 130 F.3d at 402 ("it cannot be used to introduce a separate, distinct and new cause of action[.]"). The Court therefore denies Plaintiff's motion for leave to file a supplemental complaint (ECF No. 36), and overrules his related objection (ECF No. 46).

## V.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that the Magistrate Judge's Report and Recommendation (ECF No. 43) is accepted in part, and rejected in part, as explained herein. Defendant's motions for summary judgment (ECF Nos. 20, 28, 30) are granted in part, and denied in

part, as explained herein. Plaintiff's Objection (ECF No. 45) to the Report and Recommendation is also sustained in part, and overruled in part, as explained herein.

It is further ordered that summary judgment is granted in favor of Defendants on Count I, Plaintiff's free exercise clause claim.

It is further ordered that summary judgment to Defendants is denied as to Count II, Plaintiff's equal protection clause claim. Plaintiff's equal protection clause claim will proceed against Defendants Olivas, Harkreader, LeGrand, and Foster.

It is further ordered that summary judgment is granted in favor of Defendants as to Count III, Plaintiff's due process clause claim.

It is further ordered that Plaintiff's objection (ECF No. 46) to the Magistrate Judge's order (ECF No. 44) is overruled. Following *de novo* review, Plaintiff's motion for leave to file a supplemental complaint (ECF No. 36) is denied.

DATED THIS 12th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE