# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RICHARD R. GATES,<br><br>       Plaintiff,<br><br>v.<br><br>R. LEGRAND, *et al.*,<br>       Defendants. | 3:16-cv-00321-MMD-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff Richard Gates ("Gates") against Defendants Richard LeGrand, Sheryl Foster, Bruce Harkreader, and Valaree Olivas (collectively referred to as "Defendants"). Currently pending before the court is Defendants LeGrand, Foster, and Harkreader's motion for summary judgment. (ECF No. 70), which was joined, in part, by Olivas (ECF No. 73). Gates opposed the motion (ECF No. 72), and Defendants replied (ECF No. 74). For the reasons stated below, the court recommends that Defendants' motion for summary judgment, and the joinder thereto (ECF Nos. 70, 73) be granted.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gates is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (ECF No. 5). Proceeding *pro se*, Gates filed the instant civil rights action pursuant to 42 U.S.C. § 1983, alleging three counts and seeking monetary damages and injunctive relief. (*Id.*)

The alleged events giving rise to Gates's case are as follows: Gates is a practicing Wiccan. (ECF No. 5 at 3.) In January 2014, Gates requested and received

---

[1]  This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

approval from the chaplain and associate warden to purchase religious items. (*Id.*) When the religious items came from an approved vendor, R. Lorton issued Gates an unauthorized property notification stating that Gates's box order exceeded the $200 a month order limit and had to be paid by inmate services. (*Id.*)  Gates spoke to Harkreader and argued that the $200 limit applied only to hobby craft packages and not to religious packages. (*Id.*)  Harkreader spoke to Sgt. Lindberg, who agreed with Gates. (*Id.*)  Sgt. Lindberg dispensed the religious package, including amber fragrant resin granular incense ("Incense"), to Gates that afternoon. (*Id.*)  However, Sgt. Lindberg unauthorized the charcoal tabs that were in the package. (*Id.*)  Gates again contacted Harkreader with AR 810 and addendums, which demonstrated that charcoal tabs were permitted items for the Wiccan faith. (*Id.* at 3-4.)  Harkreader brought this to the attention of Sgt. Lindberg, who gave the charcoal tabs back to Gates. (*Id.* at 4.)

In July 2014, Gates requested and received approval from the chaplain and associate warden to purchase another religious package. (*Id.*) In August 2014, when the religious package arrived, Lt. Olivas issued an unauthorized property notification for the Incense, chamomile flower, and peppermint leaf because they were not permitted herbs under AR 810. (*Id.* at 5.) After Gates contacted Harkreader, Harkreader spoke to Olivas. (*Id.*) After their conversation, Gates received his peppermint leaf as permissible under AR 810, but relinquished the chamomile flower because it was not permitted under AR 810. (*Id.*) However, Gates grieved to prison officials about the unauthorized property notification for the Incense. (*Id.*) Harkreader denied the informal grievance; LeGrand denied the appeal; and Foster denied the next level appeal. (*Id.* at 5-6.)

In Count I, Gates alleges First Amendment violations based on the denial of the Incense because it is substantial to the practice of the Wiccan faith. (*Id.* at 6.) In Count II, Gates alleges a Fourteenth Amendment equal protection violation because Buddhist, Roman Catholic, and Jewish inmates were permitted to possess granular resin incense, but Wiccans were not. (*Id.* at 7.) In Count III, Gates alleges a Fourteenth Amendment

due process violation for the denial of the Incense because prison officials had approved the purchase and then deprived him of it. (*Id.* at 7-8.)

Pursuant to 28 U.S.C. § 1915(A)(a), the District Court entered a screening order allowing Gates to proceed with each of his three Counts. (ECF No. 7.) Specifically, the District Court found: (1) in Count I, Gates stated a colorable free exercise of religion claim against Defendants Olivas, Harkreader, LeGrand, and Foster based on the allegations that in August 2014, prison officials denied Gates's ability to have Incense, which he needs to practice his Wiccan faith; (2) in Count II, Gates stated a colorable equal protection claim against Defendants Olivas, Harkreader, LeGrand, and Foster based on the allegations that prison officials permitted Buddhist, Roman Catholic, and Jewish inmates to possess granular resin incense for their religions, but did not permit the Wiccan inmates to do the same; and (3) in Count III, Gates stated a colorable due process claim against Defendants Olivas, Harkreader, LeGrand, and Foster based on the allegations that prison officials deprived Gates of his Incense in an authorized manner pursuant to administrative regulations. (*Id.* at 5-6.)

On August 13, 2018, Defendants filed their first motion for summary judgment, asserting they were entitled to summary judgment because (1) Gates failed to properly exhaust his administrative remedies; (2) Foster, Harkreader, and LeGrand's actions did not rise to the level of personal participation required by a § 1983 suit; (3) Gates was provided adequate due process procedures related to the deprivation of his incense; and (4) Defendants were entitled to qualified immunity. (ECF No. 20.) On January 28, 2019, this court issued a Report and Recommendation on the motion for summary judgment recommending that it be granted, in its entirety, based on a failure to exhaust, lack of personal participation as to Foster, Harkreader, and LeGrand, and that Gates was provided adequate due process. (*See* ECF No. 43.)

On March 12, 2019, the District Court entered an order accepting, in part, and rejecting, in part, the Report and Recommendation. (*See* ECF No. 48.) Specifically, summary judgment was granted in favor of Defendants as to the Count I free exercise

claim and the Count III due process claim, but was denied as to the Count II equal protection claim. (*Id.*) The District Court found there was a question of fact as to whether Harkreader, LeGrand, and Foster sufficiently personally participated in the alleged constitutional violation. (*Id.* at 12-14.) The Court's order states in relevant part:

> [T]he Grievance itself shows that Harkreader, LeGrand, and Foster conducted their own investigations into Plaintiff's complaints before reaching their decisions to uphold the confiscation of his Incense (ECF No. 20-2 at 3 (Foster), 6 (LeGrand), 10 (Harkreader).) Harkreader appears to have served as a go-between in negotiating with Olivias and Plaintiff to get Plaintiff his peppermint back, and convincing him to surrender his chamomile flower. (ECF No. 5 at 5). He also contacted the Chaplain's Office to verify that Incense was not an authorized item for Wiccans. (ECF No. 20-2 at 10.) Thus, he was personally involved in the decision to uphold the confiscation of Plaintiff's Incense.
>
> …
>
> Similarly, while LeGrand and Foster appear less involved in the decision to uphold the confiscation of Plaintiff's Incense than Harkreader, their grievance responses indicate they conducted their own investigations under the applicable regulations before deciding to uphold the confiscation of the Incense. (ECF No. 20-2 at 3,6.) A question of material fact accordingly remains as to whether all three of these Defendants sufficiently personally participated in Plaintiff's alleged constitutional violations to be held liable for them under Section 1983.
>
> …
>
> Further, the Court disagrees with Judge [Baldwin's] statement in the R&R upon which she based her recommendation to grant summary judgment to these Defendants for lack of personal participation. She wrote, "Gates does not allege that Foster, Harkreader, or LeGrand caused the alleged constitutional violations in Counts I, II, or [III], only that they denied his grievance." (ECF No. 43 at 12.) However, Plaintiff alleges in his operative complaint that Harkreader, Foster, and LeGrand "were made aware by the text of the grievance that this deprivation is Constitutional in nature. And continued to deny petitioner his properly approved and purchased religious property." (ECF No. 5 at 6.) Thus, Plaintiff alleges slightly more than these three Defendants merely denied his grievances. And this *may* be enough for Plaintiff to establish Harkreader, Foster, and LeGrand's personal participation in his alleged constitutional violations.

(*Id.*) (emphasis in original). Additionally, the Court found Defendants were not entitled to summary judgment on the basis of qualified immunity based on the evidence before the Court at that time. (*Id.* at 16-17.)

4

On December 9, 2019, Defendants filed the instant motion for summary judgment arguing that responding to Gates's grievances does not constitute the personal participation required for liability under a § 1983 claim, and the Defendants are entitled to qualified immunity.[2] (ECF No. 70.)

## II.  LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party

---

[2]  Olivas filed a joinder to the motion for summary judgment, where she joins the arguments in the motion except for the argument that she did not personally participate in Gates's alleged constitutional deprivations.  (ECF No. 73.)

does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

**III. DISCUSSION**

**A. Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who,

acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

### B. Personal Participation

Defendants move for summary judgment as to the sole remaining equal protection claim because now that discovery has closed, the undisputed facts demonstrate that none of the Defendants' conduct constituted personal participation and they are entitled to qualified immunity. (ECF No. 70.) Gates's response to the motion for summary judgment does not dispute any material fact but rather asserts that Defendants already sought summary judgment on the issues of personal participation and qualified immunity and were denied. (ECF No. 72.) This is an inaccurate interpretation of the District Court's prior ruling. The District Court specifically found that at that early stage of litigation, Gates's allegations *may* be enough to establish Defendants' personal participation in the alleged constitutional violations. (ECF No. 48 at 14.) However, the parties were then permitted to conduct discovery regarding the scope of Defendants' involvement. (ECF No. 54.) Having completed that discovery, Defendants continue to assert that the extent of Defendants' involvement in this case is that they simply responded to Gates's grievances, which does not constitute personal participation under § 1983. (ECF No. 70 at 12-17.) Gates provides no factual basis to support his allegation that Defendants' conduct was "slightly more" than denying his Grievance. (*See* ECF No. 72.) Gates does not dispute this fact at all, and instead incorrectly relies on the District Court's prior ruling to assert that summary judgment should be denied. (*See id.*)

7

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

Generally, one cannot state a constitutional claim based on their dissatisfaction with the grievance process. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014). Where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983." *Id.* (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)). However, the issue of whether responding to a grievance can rise to the level of personal participation required for a § 1983 claim was addressed by the Ninth Circuit in *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds in Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted several grievances about the denial of a recommended hip surgery; there was testimony that the warden and associate warden were aware of the grievances, and that they had reviewed an order stating that the inmate needed a hip replacement. *Snow*,

681 F.3d at 989. Defendants argued that there was no evidence in the record that they were personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit, however, said that their review of the grievance was sufficient to demonstrate that the warden and associate warden were aware of the inmate's serious hip condition and failed to act to prevent further harm so that the warden and associate warden were not entitled to summary judgment based on lack of personal participation. *Id.*

Foster, Harkreader, and LeGrand's responses to Gates's grievances could be sufficient to meet the personal participation required for a § 1983 suit if, through their own individual actions, they violated the Constitution. However, Gates presents no evidence that Foster, Harkreader, or LeGrand caused the alleged constitutional violation, only that they denied his grievance. Additionally, "[h]olding a prison official personally responsible for damages simply because he is familiar with a prisoner's circumstances through direct communications with the prisoner and through communications with his subordinates [or caseworkers] is such a broad theory of liability that it is inconsistent with the personal responsibility requirement for assessing damages against public officials in a 42 U.S.C. § 1983 suit." *May v. Williams*, No. 2:10-CV-576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v. Lash*, 687 F.2d 996, 1005-1006 (7th Cir. 1982); *see also Jackson, v. State of Nevada*, No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019)("[C]ourts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation."). Because Gates presents no evidence that Defendants did anything more than simply respond to his grievance, this does not rise to the level of participation required for a § 1983 suit. Based on lack of personal participation, Foster, Harkreader, and LeGrand are entitled to summary judgment on the equal protection claim.

**C. Qualified Immunity**

Even if merely responding to grievances was enough to rise to the level of personal participation, the Defendants are entitled to qualified immunity.

9

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

In *Harris v. Alvarada,* the Ninth Circuit granted qualified immunity to a prison official who complied with an official regulation. 402 Fed. Appx. 180, 181 (9th Cir. 2010)

1  (unpublished).  The Ninth Circuit held that no court had questioned the legality of the
2  regulation, so plaintiff's right was not clearly established, and the defendant was entitled
3  to qualified immunity.  *Id.*  Further, the Ninth Circuit has held that a duly enacted
4  regulation that explicitly sanctioned the conduct in question absolved an officer from
5  knowing his conduct was unlawful, except when the regulation so patently violates the
6  constitution that a reasonable officer could not believe that it was permissible to enforce
7  it.  *Grossman v. City of Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994).

8  The District Court previously denied qualified immunity on the premise that
9  Gates's right under the equal protection clause to be treated similarly to registered
10 adherents of other religions officially recognized at LCC was clearly established at the
11 time his Incense were confiscated.  (ECF No. 48 at 17.)  However, it is undisputed that
12 Gates was not denied Incense based on his Wiccan faith, but rather because Incense
13 were not considered an approved religious property item for Wiccans under AR 810, at
14 that time.  It is further undisputed that neither Gates, nor any other Wiccan, had properly
15 requested Incense be added to the Faith Group Property and/or Personal Religious
16 Property to the Faith Group Overview, pursuant to the procedures set forth in AR 810.3,
17 prior to initiating this lawsuit.  Thus, Defendants were not on notice that they could be
18 violating Gates's constitutional rights by denying his grievance in accordance with AR
19 810.  Additionally, at the time of the alleged constitutional violation, no court had found
20 AR 810 unconstitutional.  Accordingly, because it would not be clear to a reasonable
21 official in the defendant's position that following the procedures set forth in AR 810 was
22 constitutionally infirm, that right was not clearly established, and Defendants are entitled
23 to qualified immunity. *See Anderson,* 483 U.S. at 639-40.

24 **IV.   CONCLUSION**

25 Based upon the foregoing, the court recommends Defendants' motion for
26 summary judgment, and the joinder thereto, (ECF Nos. 70, 73) be granted.  The parties
27 are advised:

28

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, and the joinder thereto, (ECF Nos. 70, 73) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that judgment be entered accordingly.

**DATED**:  March 27, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**